## No. 14,007.

### CHARLES B. MAGINNIS VS. POLICE JURY OF TERREBONNE.

#### SYLLABUS.

The proceedings in matter of laying out a public road were regularly conducted. The committee of freeholders, duly appointed and duly qualified, designated the course of the road. Their report was approved by the Police Jury, and the amount of damages found was provided for by ordering warrants to issue for the same. The report and the approval of the Police Jury, and the facts bearing upon the point urged, do not show that the committee of freeholders had failed to lay out a road to the extent that this committee had been directed to act.

The value fixed for damages incurred is sworn to as correct by a number of witnesses. This testimony, and the weight due to the report of the freeholders who reside in the neighborhood, sustain defendant's position regarding the value of the property.

The proposed route is the shortest and the most direct and, from the testimony, less expensive, and will cause less damage than the others indicated.

APPEAL from the Twentieth Judicial District, Parish of Terrebonne.—*Caillouet, J.*

*Suthon & Wallis,* for Plaintiff, Appellant.

*W. P. Martin,* District Attorney (*Charles W. DeRoy,* of Counsel), for Defendant, Appellee.

The opinion of the court was delivered by

BREAUX, J.   Plaintiff objects to the action of the defendant in seeking to locate a public road over his land, and, in addition, if the proceedings in expropriation be held legal, he then complains of the damages assessed as being insufficient.

Plaintiff owns a plantation railroad and steam locomotives, the operations of which he fears will be interfered with if the road defendant seeks to have opened be located as proposed, as it runs along his railroad track and crosses it at four different places along the line. He further avers that fences will have to be constructed along both sides of the road and other expenses will have to be incurred, for which the amount voted to be paid is not just and adequate compensation.

Defendant joined issue with plaintiff and urged that the requirements of the law have been closely observed; that the appointment of the committee of freeholders to locate the road and assess damages was made in due form; that the members of this committee duly qualified and fixed damages in an amount sufficient; that the police jury accepted their report, and gave it approval and appropriated one thousand dollars to pay plaintiff, that being the amount assessed by the committee; and the defendant proposed to issue warrants for the amount in favor of the owners of the plantation on which the road in question is located. The judge of the District Court wrote an elaborate and well considered opinion.

The judgment is for defendant on all the points raised. It decrees that the action of the jury of freeholders is legal, also the proceedings of the police jury, under whose authority the jury of freeholders acted, and decrees further that the road be opened as a public road upon the police jury paying to the owners of the Aragon plantation, on which the road is located, the amount assessed by the freeholders.

We have every reason to conclude that the inhabitants for whose use it is proposed to open the road in question, are entitled to a road leading from their settlement to the principal thoroughfare along the Bayou Terrebonne. These inhabitants are settlers on small farms at some distance from the general public road. Between their settlement and the public road there are plantations. This settlement is without a road to the parish seat above and is equally cut off from their post-office and church at the small place in Terrebonne known as Montegut. At this place there are a physician, a store, and medicine. The cemetery is near the place, and it is there that the people of the settlement bury their dead. Here they attend church and get their mail.

The purposes of the police jury was to open a road for these settlers. They number about three hundred. The number of the families is about seventy. There is no opposition to the opening of a road. All concerned seem to recognize the reasonableness and even necessity of laying out a road for the little settlement connecting the Pointe-aux-Chiens (the not very euphonious name of the locality) with other roads and places. Locating the road has given rise to the most important issue.

Plaintiff, in the pleadings and as a witness, suggests other roads equally as convenient and favorable to the settlement, and less damaging to his own interests. Plaintiff apprehends that by opening a road along his plantation railroad, it will be necessary to remove the railroad and to construct a new bed. Plaintiff's plantation railroad leads from the Bayou Terrebonne to the Bayou-aux-Chiens, and it is along this road-bed that defendant proposes to locate the road.

In view of this apprehension, we have given close attention to the testimony regarding the other roads suggested by plaintiff. Any of these would be more expensive, and the laying out of the road attended with much greater difficulty. The line proposed for the road above plaintiff's place would be much longer, and that below would be through marsh or prairie *tremblante*, not easily to be drained or redeemed.

We imagine that after this road will have been opened, these neighbors will agree upon a *modus vivendi* that will enable plaintiff to let his plantation railroad remain where it is and the citizens of *Pointe-aux-Chiens* to pass over this road without injury to themselves or their neighbor.

The committee of freeholders, in their report to the police jury, state

that this road is the same which was a private road running through Aragon plantation for a number of years, and which was used by the inhabitants in coming from, and going to, Pointe-aux-Chiens settlement; that this road will be of great use and advantage to the inhabitants of the locality, and less damaging than any other if selected. This report is sustained by the weight of the testimony. From this report and the testimony of witnesses, we are disposed to believe that if a change were to be made in the course of the road, even greater difficulties in the construction of the road-bed and in claims for damages would have to be met.

The decision in Gross vs. Police Jury, 7th Rob. 121, involved questions very similar to those before us for decision. We can reiterate that which was said in those days, that "supervisory power as to the course of the road, we think, ought to be cautiously exercised, as it will most generally involve questions not judicial, but of police, and the proceedings of the jury of freeholders and the police jury should be sustained unless manifestly unjust."

Owners at first nearly always look with some disfavor upon the laying of a public road through their premises. It is a natural feeling. The reasons prompting them are worthy of the most careful consideration. For it is their own. But the law steps in at times and requires them to yield their rights to public necessity. C. C. 2626. We have seen that the necessity and utility of the road is undeniable. As a general rule the most direct course should be selected. One of the routes suggested by plaintiff is through low and undrained places unfavorable to the purpose intended, and the others present the possibility of meeting with many difficulties and of having to pay considerable damages.

Counsel for plaintiff confidently refers to the testimony of Mr. Cage, one of the witnesses and a prominent resident of the parish, to which we attach importance. In his view, another road than the one selected would be a better road. That may be. Still we cannot overlook the fact that in the course of his testimony the witness said (we quote from the testimony):

"Q. How far would the inhabitants of Pointe-aux-Chiens have to go to reach Montegut by following the Pointe-aux-Chiena ridge?

"A. Taking the settlement as a start, it would be eight or nine miles.

"Q. How far would they have to go by coming across Aragon plantation?

"A. Possibly half that distance."

This difference is, of itself, enough to justify, as we think, the selection made, particularly in view of the fact, as we take it, that the testimony does not show that the road to which Mr. Cage refers would cost less. We have copied from the testimony of this witness as above. We do not insert a summary of all the testimony of other witnesses sustaining the view, as we think that the other routes pointed out and shown by plaintiff would not serve the public equally as well. Perhaps they would cause less damage to Aragon plantation, but this is not the only test, unless it is made to appear that a hardship had been imposed and that a legal right had been violated by laying this road as intended.

We insert an excerpt from the testimony of Mr. Jolet, a surveyor.

"Ans. I think where the road is to-day is the only place where a road can be practically made. If you were to go below there, or above there, you would strike the marsh; when you get midway between Bayou Terrebonne and Bayou Pointe-aux-Chiens, the ridge is very narrow."

Again, at another time, while testifying:

"According to my recollection the road now existing evidently was built on the highest portion of the ridge from one bayou to the other, and that receding either southward or northward of this road, one would encounter more difficulty in building another road."

Plaintiff's able counsel specially calls into question the legality of the ordinance because the compensation is not just and adequate, and because the ordinance does not comply with the report of the jury of freeholders. We propose to take up these two grounds of attack in their inverse order.

The objection that the ordinance does not comply with the report of the jury of freeholders is based upon the fact that the freeholders reported that they had located the road along the right bank of Bayou Pointe-aux-Chiens to the place of Mrs. John Neal, while the police jury ordinance approving the report had in view a connecting road between the Bayou Terrebonne and Bayou Pointe-aux-Chiens. Defendant, in its pleadings, sets forth that the road, from the head of Bayou Pointe-aux-Chiens, has been opened some years and we infer that further expropriation is not necessary to the settlement in question, as they have roads leading to the proposed road.

With reference to the inadequacy of the compensation, from the

Succession of Gragard—Administrator vs. Bank.

plaintiff's point of view, the amount allowed is small. On the other hand, the weight of the testimony for the defendant shows that the amount is large enough for the permanent use of the road. The amount is to be paid before opening the road. This disposes of the complaint that defendant will open the road before paying the amount in question.

The judgment decrees that payment be made before taking the property for public use, and enforces the provision of the Constitution.

For these reasons, the judgment appealed from is affirmed.

Rehearing refused.